E-FILED
Thursday, 03 February, 2022  04:44:12 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JOSEPH SHERMAN, individually and on behalf of himself all others similarly situated, | ) ) ) Case No. 20-cv-1185 |
| *Plaintiff,* | ) ) Hon. Michael M. Mihm |
| v. | ) Presiding Judge ) |
| BRANDT INDUSTRIES USA LTD., | ) Hon. Jonathan E. Hawley ) Magistrate Judge |
| *Defendant.* | ) ) ) |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

122234

**TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................................1

II.     Relevant Background ...............................................................................................2

        A.      The Biometric Information Privacy Act.......................................................2

        B.      Plaintiff's allegations. .................................................................................2

        C.      Procedural History. .....................................................................................3

        D.      The proposed Settlement. ............................................................................6

                1.      The Settlement Class. .......................................................................6

                2.      Monetary relief for Settlement Class Members. ...............................6

                3.      Cy pres distributions.........................................................................7

                4.      Settlement Class release....................................................................7

                5.      The Service Award. ..........................................................................8

                6.      Attorneys' fees and costs. ................................................................8

                7.      Administration and Notice. ...............................................................9

III.    ARGUMENT ...........................................................................................................10

        A.      The settlement approval process................................................................10

        B.      The Settlement warrants preliminary approval...........................................11

                1.      The Class has been adequately represented. ....................................12

                2.      The Settlement resulted from arm's length negotiations..................13

                3.      The proposed Settlement treats Settlement Class Members equally........14

                4.      The relief provided to the Settlement Class is more than adequate. ........15

                        a.      The risks of continued litigation weigh, when viewed
                                against the relief provided, weigh in favor of approval. ..............17

                        b.      The proposed method of distribution is effective. .......................19

                        c.      The proposed attorney fee award and timing of payment
                                support preliminary approval. ....................................................20

        C.      The Settlement Class should be certified. .........................................................21

                1.      The Settlement Class is sufficiently numerous. ....................................22

                2.      Plaintiff's claims are typical. ...........................................................22

                3.      Plaintiff and Counsel are adequate....................................................23

                4.      Commonality is satisfied. ................................................................23

                5.      Common questions predominate.......................................................24

                6.      A class action is the superior means of resolving this dispute.................25

i

D.      The proposed Notice plan is constitutionally sound. ...........................................25

IV.   CONCLUSION ....................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
  (N.D. Ill. May 5, 2011) ...........................................................................................19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................21

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400
  (N.D. Ill. Mar. 2, 2017) ..........................................................................................14

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................10, 12

*Beaton v. SpeedyPC Software*,
  907 F.3d 1018 (7th Cir. 2018) ...............................................................................22

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) ...............................................................................8, 21

*Bryant v. Compass Group USA , Inc*.
  958 F.3d 617 (7th Cir. 2020) .....................................................................................3

*Burlinski, et. al v. TopGolf USA, Inc., et. al*,
  Case No. 1:19-cv-06700 (N.D. Ill.) ........................................................................15

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ...................................................................................10

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641 (N.D. Ill. 2006) ..............................................................................12

*General Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................25

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093
  (N..D. Ill. Oct. 10, 1995) ...................................................................................10, 19

*Golon v. Ohio Savs. Bank*,
   No. 98-cv-7430, 1999 WL 965593
   (N.D. Ill. Oct. 15, 1999) ..........................................................................24

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368
   (S.D. Ill. Dec. 13, 2018) ..........................................................................20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010).................................................................15

*In re Facebook Biometric Info. Privacy Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018)................................................................24

*In re Google Buzz Privacy Litig.*,
   No. C 10-00672 JW, 2011 WL 7460099
   (N.D. Cal. June 2, 2011)...........................................................................16

*In re Google LLC Street View Electronic Communications Litigation*,
   No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928
   (N.D. Cal. Mar. 18, 2020).........................................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................11

*In re Southwest Airlines Voucher Litig.*,
   No. 11-cv-8176, 2013 WL 4510197
   (N.D. Ill. Aug. 26, 2013) ..........................................................................18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ......................................................................7

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ....................................................................10

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*
No. 2019-CH-01813 (Cir. Ct. Cook Cty.)..................................................16

*Jones v. CBC Rest. Corp.*,
   1:19-cv-06736 (N.D. Ill.)..........................................................................16

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
  No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255
  (N.D. Ill. Feb. 19, 2014) ...................................................................................25

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................16

*Lane v. Schenker, Inc.*,
  3:19-cv-00507-NJR (S.D. Ill.) ...........................................................................16

*Lawrence v. First Fin. Inv. Fund V, LLC*,
  No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184
  (D. Utah Aug. 26, 2021) ....................................................................................20

*Martin v. JTH Tax, Inc.*,
  No. 13-6923 (N.D. Ill. Sept. 16, 2015) ...............................................................21

*Martinez v. Nando's Rest. Grp., Inc.*,
  No. 19-cv-07012 (N.D. Ill.) ...............................................................................16

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................................22, 24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...........................................................................................25

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .............................................................................22

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) .............................................................................25

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ...........................................................................................15

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...............................................................16

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
  (N.D. Ill. Jan. 11, 2007) ....................................................................................19

*Rysewyk v. Sears Holdings Corp.*,
  Civil Action No. 1:15-cv-4519-MSS,
  2019 U.S. Dist. LEXIS 236004
  (N.D. Ill. Jan. 29, 2019)................................................................................12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................19

*Schulte v. Fifth Third Bank*,
  No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810
  (N.D. Ill. Sept. 10, 2010)...........................................................................14

*Smith v. Dearborn County*,
  244 F.R.D. 512 (S.D. Ind. 2007)..........................................................22

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926
  (N.D. Ill. May 14, 2019).............................................................................14

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ...................................................................22

*Svagdis v. Alro Steel Corp.*,
  2017-CH-12566 ..............................................................................................21

*Swanson v. American Consumer Industries, Inc.*,
  415 F.2d 1326 (7th Cir. 1969) ................................................................22

*Taylor v. Shutterfly, Inc.*,
  No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069
  (N.D. Cal. Dec. 7, 2021)............................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................23

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ...................................................................12

*Wright v.  Nationstar Mortg. LLC*,
  No. 14 C 10457, 2016 WL 4505169
  (N.D. Ill. Aug. 29, 2016) ...........................................................................13

vi

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
   2018-CH-02140 No. 2019-CH-01813 (Cir. Ct. Cook Cty.)......................................................20

*Zhirovetskiy v. Zayo Group, LLC*,
   2017-CH-09323 (Cir. Ct. Cook Cty).......................................................................................15

**Rules**

Fed. R. Civ. P. 23......................................................................................................passim

**Treatises**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)...........................................10, 11

*Manual for Complex Litig.*,
   at §§ 13.14, 21.312, 21.632, and 21.633 (4th ed. 2004)...................................................10, 25

## I.      INTRODUCTION

Plaintiff Joseph Sherman ("Plaintiff" or "Sherman") respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Brandt Industries USA LTD ("Brandt" or "Defendant").

Mr. Sherman alleges Brandt violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting its employees' fingerprints without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

After two years of hard fought litigation, which entailed significant motion practice, extensive written discovery, and protracted discovery disputes, the Parties have reached a class-wide Settlement which provides outstanding relief for a Settlement Class consisting of Brandt's current and former Illinois-based employees and contractors. If approved, Brandt is required to pay $250,000 into a non-reversionary Settlement Fund from which approximately 240 Settlement Class Members will receive an equal, *pro-rata* distribution of roughly $616.60,[1] without the need to file a claim or take any other action.

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, places the Settlement squarely within the range of possible approval, whereas the proposed Settlement Class easily satisfies Rule 23's requirements for conditional certification. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff's

---

[1] Plaintiff's estimate is based on a pro-rata distribution after deduction of $10,000 administration costs, $5,000 for incentive award, $86,400 for fees and $614.90 in expenses.  As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or incentive award.

attorneys as Class Counsel, approve the proposed form and method of Class Notice, and set a Final Approval Hearing.

## II.    Relevant Background

### A.    The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed (much less replaced) when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p. 249 (May 30, 2008); *see also* 740 ILCS 14/5(g). The statute features several safeguards that protect Illinois' citizens' ability to maintain control over their biometric information.

One such safeguard is Section 15(b)'s informed consent regime. As relevant to this case, this provision prohibits an employer from collecting its employee's biometric information without first: (1) providing the employee with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric information will be retained; and (2) obtaining a signed written release from the employee authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA, in turn, requires an employer who possess biometric information to destroy that data once the purpose for which it was collected has been satisfied. *See* 740 ILCS 14/15(a).

### B.    Plaintiff's allegations.

Brandt is a manufacturer of agricultural machinery headquartered in Saskatchewan,

2

Canada. ECF No. 28 at 6. From June 2018 to March 2020, Plaintiff worked as a material handler at Brandt's Hudson, Illinois location. Compl., ¶¶ 27-29. As alleged in the Complaint, Brandt required Plaintiff (like all other new employees) to use a biometric timekeeping system that verified his identity through a fingerprint scan. *Id.* at ¶¶ 8-9, 24, 28-31. Plaintiff alleges Brandt required new hires to scan their fingerprints to enroll in Brandt's employee fingerprint database, and to subsequently use their fingerprints to clock in and out of work. *Id.* at ¶¶ 24, 28-31.

According to Plaintiff, Brandt's implementation of this biometric timekeeping system directly violated BIPA in two discrete ways. First, Plaintiff alleges Brandt violated Section 15(a) of the statute by failing to implement and adhered to a publicly-available policy governing the retention and destruction of its employees' biometric data. *See id.* at ¶¶ 26, 36-37, 44-52. Second, Plaintiff alleges Brandt violated Section 15(b) by collecting, storing, and using its employees' biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.* at ¶¶ 24-25, 32-35, 53-62.

## C.  Procedural History.

Plaintiff filed this class action on May 11, 2020, seeking redress on behalf of himself and a putative class of current and former employees for Brandt's alleged violations of Sections 15(a) and 15(b) of BIPA.

On July 23, 2020, Brandt moved for dismissal under Federal Rules 12(b)(6) and 12(b)(1), arguing that: (1) Plaintiff lacked standing to pursue the Section 15(a) claim in light of the Seventh Circuit's decision in *Bryant v. Compass Group USA , Inc.* 958 F.3d 617, 626 (7th Cir. 2020); (2) Brandt's alleged failure to develop the biometric retention and destruction policy mandated by Section 15(a) precluded any liability for failing to comply with such a policy; (3) Plaintiff failed to allege the type of negligent and/or reckless/intentional conduct needed to recover statutory

3

damages; and (4) Plaintiff's claims were preempted by the Illinois Worker's Compensation Act. *See, generally,* ECF Nos. 9-10.  The same day, Brandt moved to stay the case pending the Illinois Appellate Court's resolution of *McDonald v. Symphony Bronzeville Park, LLC. See* ECF Nos. 11-12.

On August 28, 2020, Brandt filed another motion to stay based on the pending appeals in *Marion v. Ring Container Technologies. See* ECF Nos. 19-20. On September 15, 2020, after briefing and oral arguments, the Court entered an Order granting the First Stay Motion and denying the Second Stay Motion. *See* ECF No. 23.

On September 22, 2020, following the resolution of *McDonald,* the Court granted Plaintiff's motion to lift the stay. On November 12, 2020, after briefing and supplemental authorities, the Court entered an Order denying Brandt's motion to dismiss. *See* ECF No. 27. In its Order, the Court instructed Brandt to answer the Complaint by November 30, 2020, and instructed Plaintiff to file his motion for class certification on or before December 7, 2020. *Id.*

On November 30, 2020, Brandt filed its Answer and Affirmative Defenses.  ECF No. 28. On December 21, 2020, after receiving a brief extension of time, Plaintiff filed his motion for class certification ("Class Cert Motion"). *See* ECF No. 30.

Shortly thereafter, the Parties discussed pursuing mediation.  Thus, on January 4, 2021, Brandt filed a motion to hold briefing on Plaintiff's Class Cert Motion in abeyance while the Parties explored mediation, ECF No. 31, which the Court granted on January 6, 2021.

On February 9, 2021, Brandt notified the Court the Parties had decided against pursuing mediation. ECF No. 32, At the same time, Brandt filed a third motion to stay the matter pending the resolution of three interlocutory appeals.  *See* ECF Nos. 33-34.  Following full briefing and oral arguments, the Court denied Brandt's motion on March 18, 2021, and directed the Parties to

hold a Rule 26(f) planning conference.

During the Parties' subsequent Rule 26 planning conference, Brandt requested leave to depose Plaintiff before responding to the Class Cert Motion. *See* ECF No. 39 at 6. Thus, the Court withdrew the pending Class Cert Motion and granted Plaintiff leave to refile following the completion of class discovery.

The Parties subsequently served interrogatories and requests to produce, exchanged written discovery responses, and produced responsive documents. The Parties' discovery efforts were highly contentious, resulting in a number of 37.2 conferences as well as months of contested motion practice, oral arguments, and appeals concerning the subpoenas issued to two of Plaintiff's former employers. *See* ECF Nos. 45-46, 48-51, 55-56, 58-62. After this dispute was resolved, Plaintiff served his second set of interrogatories and document requests on September 15, 2021, to which Brandt responded on October 15, 2021. *See* ECF No. 63. On October 29, 2021, Brandt supplemented its document production by producing another set of responsive documents. ECF No. 65. On November 11, 2021, Plaintiff issued a third-party subpoena to Kronos, Inc., the manufacturer of the time keeping system at issue. *See* Declaration of Keith J. Keogh ("Keogh Decl."), ¶ 4, attached hereto as Exhibit A.

With written discovery largely complete, the Parties began coordinating oral discovery. *Id.* To that end, Brandt noticed Plaintiff's deposition for December 3, 2021, and Brandt's 30(b)(6) representative's deposition for December 8, 2021. *Id.*

In the meantime, beginning in early September 2021, the Parties revisited the issue of a class-wide settlement. *Id.* at ¶ 5. After several rounds of arm's-length negotiations, the Parties reached an agreement in principle on the terms of the Settlement on November 19, 2021. *Id.* The Parties then negotiated the final terms of the Settlement over the next two-and-a-half months, *id.*,

which ultimately culminated in the fully executed Settlement Agreement for which Plaintiff now

seeks preliminary approval, a copy of which is attached hereto as Exhibit B.

**D.      The proposed Settlement.**

The Settlement's details are contained in the Settlement Agreement signed by the Parties.

*See* Ex. B. For purposes of preliminary approval, the following summarizes the Agreement's

terms:

**1.   The Settlement Class.**

The Settlement Class is defined as follows:

> The 240 individuals employed by Defendant Brandt Industries USA LTD and any other related entities in the State of Illinois and/or assigned to work at the Illinois facility of Brandt Industries USA Ltd. by temporary staffing agencies, who logged onto, interfaced with, or used any software, systems, or devices that used the individual's finger, hand, or any biometric identifier of any type ("Biometric Systems") in Illinois, including any employee of the above entities who has a claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq., during the statutory period through November 22, 2021.

Agreement § II.30.[2]

**2.   Monetary relief for Settlement Class Members.**

The Settlement requires Defendants to create a non-reversionary Settlement Fund of

$250,000.00, from which each Settlement Class Member will receive a *pro rata* portion after

payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive

award approved by the Court. *See* Ex. B [Agreement] at §§ II.36, VI.5, XI.2-3. No amount of the

Settlement Fund will revert to Defendants, and Settlement Class Members aren't required to

submit a claim or take any action to receive compensation. Instead, the Settlement Administrator

will automatically issue checks to the last known address of each Settlement Class Member who

---

[2] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family and all persons who timely opted-out of the Settlement Class.  *Id*.

declines to opt out. *Id.* at §§ VI.5, XI.2. Checks issued to Settlement Class Members shall remain valid for 120 days from the date of their issuance. *Id.* at § XI.2.

### 3. Cy pres distributions.

If, after the expiration date of the checks distributed, there remains money in the Settlement Fund those remaining funds will be donated to a *cy pres* beneficiary designated by the Court. Plaintiff has suggested the Electronic Privacy Information Center ("EPIC"), *see* https://epic.org, as its mission of safeguarding privacy rights in the digital age is an all fours with the biometric privacy interests of the Settlement Class as mandated by the Seventh Circuit. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (Rejected the Legal Assistance Foundation of Metropolitan Chicago, which it acknowledged a worthy organization, as a cy pres recipient in a TCPA case because it was not closely related to the class interests in a TCPA class action.)

Defendant has suggested Wounded Warrior Project ("WWP"). Although it is a very worthy organization that does great work, it is not closely aligned with the class' claims as required.

Thus, the Parties request that the Court designate either EPIC or the WWP as the *cy pres* recipient.

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "relate in any way to information that is or could be protected under [BIPA] or any other similar state, local, or federal law, regulation, or ordinance, or common law, regarding the use, collection, capture, receipt, maintenance, storage, transmission, or disclosure of

biometric identifiers that Settlement Class Members claim, might claim, or could have claimed in any court or administrative proceeding." *Id.* at § XII.1.

### 5. The Service Award.

The Agreement provides Plaintiff may petition the Court for a service award. *Id.* [Agreement] at § VI.4. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id.* Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff will request an incentive award of $5,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' fees and costs.

Prior to the Final Approval hearing and prior to the objection deadline, Class Counsel will apply to the Court for an award of attorneys' fees and costs. *Id*. at §§ VI.3, VII.2.B. As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% (after settlement administration costs are deducted) plus reasonable expenses in common fund class settlements. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the

enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Ex. B [Agreement], § VI.3  Further, the Class Notice will inform the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs as well as the exact dollar figure that amounts to.  As with the incentive award to the class, the Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7.  Administration and Notice.

All costs of notice and claims administration shall not exceed $10,000 and be advanced by Brandt, credited against the Settlement Fund.  The Settlement Administrator will be American Legal Claim Services, LLC subject to this Court's approval.  Ex. B [Agreement], § II.28.  The Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice; (2) setting up and maintaining the settlement website and toll-free number; and (3) issuing settlement payments.  *Id.* at §§ VII, XI.

Within fourteen (14) days of the entry of Preliminary Approval Order, the Administrator will issue the Class Notice (Exhibit 1 to the Agreement) via direct mail to all  Settlement Class Members.  *Id.* at §§ II.17, VII.2.A. Before doing so, the Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. *Id.* at VII.2.A. For Settlement Class Members whose Notice is returned as undeliverable, the Administrator will conduct an database search and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.* The Settlement Administrator will establish and maintain a Settlement Website, which shall include the Agreement, Website Notice, the Preliminary Approval Order, the operative Complaint, the attorney fee motion and any other materials the Parties agree to include.  *Id.* § VI.2.B.

### III.    ARGUMENT

#### A.    The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11.25. With this motion, Plaintiff requests that the Court take the first step by granting preliminary approval.

Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i—ii) (emphasis in original). Both requirements are satisfied here.

## B.    The Settlement warrants preliminary approval.

When deciding whether to grant preliminary approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g., Rysewyk v. Sears Holdings Corp.*, Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019).[3]  Each of these factors support preliminary approval.

---

[3] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors

11

**1.   The Class has been adequately represented.**

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (3) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs of the adequacy analysis are satisfied here. To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class he seeks to represent. Plaintiff's and the other Settlement Class Members' are all former Brandt employees who share identical claims arising from a common course of conduct: Brandt's allegedly unlawful collection and retention of their biometric data. Moreover, Plaintiff has vigorously prosecuted those claims on behalf of the Settlement Class by retaining counsel, assisting his attorneys in investigating the Settlement Class's BIPA claims, reviewing and approving the Class Action Complaint, answering written discovery, regularly conferring with his attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it.  *See* Ex. A [Keogh Decl.], ¶ 13.

The third prong is also satisfied because Class Counsel have extensive experience in complex litigation and consumer class actions involving BIPA as well as other statutory privacy claims, and have been found adequate and appointed class counsel in scores of cases arising under

---

articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

various other consumer protection statutes. *See id.* at ¶ 3. Drawing on this experience, Class Counsel were able to evaluate the merits of this case, Brandt's defenses, the benefits of the proposed Settlement, and the risks of further litigation. *Id.* at ¶¶ 9, 11-12.

Further, Class Counsel has vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, briefing and defeating a dismiss, briefing two motions to stay, taking discovery into merits and class issues, and litigating a number of discovery disputes. *See id.* at ¶ 4. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement resulted from arm's length negotiations.

The Settlement is the product of an "arm's length transaction such Rule 23(e)(2) is satisfied. It was not until after actively litigating this matter for a year and a half and exchanging substantial written discovery that the Parties agreed the case was well-suited to revisit settlement discussions. *See Wright v. Nationstar Mortg.* LLC, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation . . . and engaged in discovery" prior to reaching settlement). Those discussions entailed multiple rounds of contentious negotiations before the Parties agreed on the principle terms of the Settlement on November 19, 2021. *See* Ex. A [Keogh Decl,], ¶ 5.

Once those terms were in place, the Parties spent another two-and-a-half months negotiating the finer details of the Settlement Agreement before executing it on February 2, 2022. *Id.* at ¶ 5.

13

The arms-length nature of the Parties' discussions is also borne out by the terms of the Settlement Agreement itself. The Settlement Agreement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class, and lacks any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3. The proposed Settlement treats Settlement Class Members equally.

The next Rule 23(e)(2) consideration also supports approval where the proposed settlement treats all members the same. Here, each Settlement Class Member has identical BIPA claims against Brandt, which is why they receive identical treatment under the proposed Settlement Agreement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated

14

differently, and each can object or opt out in the same fashion. Because there is no disparate treatment between members, the Settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

The most critical Rule 23(e)(2) factor analyzes whether the relief provided for the class is adequate. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, Brandt has agreed to create a $250,000 non-reversionary Settlement Fund for a class of 240 employees, all of whom will have a check automatically sent to their last known address (aside from those who timely exclude themselves, of course). *See* Ex. B [Agreement] at §§ II.30, II.36. The Settlement therefore represents a significant and immediate value for those Class Members—a gross amount of $1,041.66 apiece, less *pro rata* reductions for Administrative Expenses, attorney's fees, and the incentive award (if any). As noted above, Plaintiff estimates every single class member will receive $616 after reductions for Administrative Expenses, attorney's fees, and the incentive award.

This class relief is in line with, if not superior to, other BIPA settlements that have received court approval. *See, e.g., Burlinski, et. al v. TopGolf USA, Inc., et. al,* Case No. 1:19-cv-06700, ECF No. 103 (N.D. Ill. Octo. 13, 2021) (approving settlement providing gross recovery of approximately $1,000 per class member); *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, ECF No. 63 (N.D. Ill. Oct. 27, 2020) (same); *Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Lane v. Schenker, Inc.,* 3:19-cv-00507-NJR, ECF No. 51 (S.D. Ill. Nov. 17, 2020) (gross recovery of $1,000 per class member); *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (gross

recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member).

Outside the realm of BIPA, the cash payments afforded by the Settlement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little (if any) monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs) in Electronic Communications Privacy Act (ECPA) matter with $10,000 available statutory damages); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving settlement consisting solely of $8.5 million *cy pres* payment where statutory claims at issue provided for statutory damages of up to $10,000 per claim). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 261-62 (E.D.N.Y. 2009) ("When the benefit is . . . placed in the context of the risks and delay of continued litigation[,]" a settlement providing $6.75 per class member was "clearly within the range of reasonableness" for claims brought under the Cable Communications Policy Act of 1984 which provides for minimum statutory damages of $1,000).

In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.  And, as shown below, the adequacy of the class relief is further illustrated by the sub-factors set forth in Rule 23(e)(2).

**a. The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.**

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals, as well as the risk that goes with it.

While Plaintiff remains confident in the strength of his claims, Brandt denied all of his material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Class. Brandt's primary defense is that it faces no liability under BIPA because the information captured by its timekeeping system's fingertip scanner does not fall within the statutory definition of "biometric identifiers" or "biometric information," but instead falls within a third category outside of BIPA's purview. *See* ECF No. 28 at 22-23. Defeating this highly-technical defense at would entail costly expert and third-party discovery. While Plaintiff is confident he would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

In addition, Brandt intended to avoid liability by proving, among other issues, that: (1) Brandt's reliance on a good-faith interpretation of BIPA precludes a finding of negligence or recklessness; (2) Plaintiff and the Settlement Class's claims are barred on the doctrines of waiver, estoppel, ratification, or acquiescence; (3) Plaintiff and the Settlement Class assumed the risk of any injuries resulting from Brandt's alleged statutory violations; and (4) Plaintiff and the Settlement Class lack Article III standing to pursue their BIPA claims. *See id.* at 23-25; ECF No.

54.  A victory on these defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement. The risks posed by continued litigation is readily apparent given the number of other legal and factual issues that have gone untested to date without controlling legal authority. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

And before resolving Brandt's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, his success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Brandt intended to seek reduction of damages based on the argument an award of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution.  *See* ECF No. 28 at 23. This, too, presents a significant risk to the Settlement Class, as some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by

18

statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *14-15 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of preliminary approval.

### b.  The proposed method of distribution is effective.

Fed. R. Civ. P. 23(3)(2)(C)(ii) is satisfied as the proposed method for distributing relief to the class is effective.  Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Unsurprisingly, courts routinely find this factor satisfied where, as here, class members do not need to take any affirmative steps to receive their portion of the settlement fund.  *See, e.g.,*

19

*Taylor v. Shutterfly, Inc.,* No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *20 (N.D. Cal. Dec. 7, 2021) (distribution method reasonable where "[a]ll Class Members automatically receive benefits under the Settlement, without the need to file a Claim")*; Lawrence v. First Fin. Inv. Fund V, LLC,* No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184, at *14-15 (D. Utah Aug. 26, 2021) (same). Because the Settlement Administrator will issue direct checks to the last known address of each Settlement Class Member who declines to opt out, the proposed method of distribution is clearly effective and weighs in favor of preliminary approval.

### c.  The proposed attorney fee award and timing of payment support preliminary approval.

The final relevant sub-factor[4] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Settlement Agreement does not guarantee any set fee, nor does it provide that Brandt has agreed to any set fee amount.   Instead, Class Counsel anticipates asking the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount Illinois courts and others within the Seventh Circuit routinely award in BIPA class actions. *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016); (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018) (same); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) (same); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of

---

[4] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement.  *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* Ex. A [Keogh Decl.], ¶ 10, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (36% of the fund net admin costs); *see also Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in TCPA class action of 36% of the first $10 million); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same).

Class Counsel will file their application on the date of the Notice Deadline, allowing Class Members to review or object. The Court will rule on the application and actual funding will occur at the same time as funding of the Settlement Fund. Thus, the provisions regarding fees are fair, reasonable and support approval. Considering all these factors, the relief provided to the class is more than adequate and merits approval.

For the foregoing reasons, the Parties' Settlement Agreement is fair, reasonable, and adequate, and merits approval.

## C.    The Settlement Class should be certified.

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

To that end, Plaintiff must demonstrate the Settlement Class satisfies the criteria imposed by Rule 23(a), which requires that: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law and fact common to the class; (iii) the proposed class representative's claims be typical of the class claims; and (iv) the named class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). And, because the Settlement provides for monetary relief, the Settlement Class must also satisfy Rule 23(b)(3)'s requirements that: (i) common questions of law or fact predominate over

individual issues; and (ii) the class action device is superior to other means of resolving the claims. Fed. R. Civ. P. 23(b)(2). Finally, a Rule 23(b)(3) class must also be "ascertainable"—*i.e.* defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

As explained below, the Settlement Class satisfies all of these prerequisites and should therefore be certified for settlement purposes.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. A class of as few as 40 is sufficient. *Smith v. Dearborn County*, 244 F.R.D. 512, 517 (S.D. Ind. 2007) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, fn.9 (7th Cir. 1969)). Here, the Settlement Class consists of 240 members, which easily satisfies numerosity.

### 2. Plaintiff's claims are typical.

A putative class representative also must demonstrate that his claims are typical of the claims of the class she seeks to represent. Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arise[es] from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). This ensures there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Here, there is no daylight between Plaintiff's claims and those of the Settlement Class. Instead, those claims all flow directly from Brandt's alleged failure to: (1) inform Plaintiff and the Settlement Class, in writing, about the collection of their biometric data, along with the purpose and length of term for the collection; (2) obtain Plaintiff and the Settlement Class's informed

written consent prior to colleting their biometric data; (3) implement a publicly-available policy governing the retention and destruction of biometric data; and (4) permanently destroy Plaintiff's and the Settlement Class's biometric data at the earliest practicable time (*i.e.* upon termination of their employment).  Compl., ¶¶ 24-26, 32-37**.** Hence, the outcome of Plaintiff's and the Settlement Class's claims depend entirely on *Brandt*'s biometric collection and destruction practices—*i.e.* a common  course of conduct. Consequently, Plaintiff is typical of the Settlement Class.

### 3.   Plaintiff and Counsel are adequate.

Adequacy means Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As demonstrated above, both Plaintiff and proposed Class Counsel fully satisfy this requirement.  *See* Section III.B.1, *supra*.

### 4.   Commonality is satisfied.

Commonality requires that "there are questions of law or fact common to the class" and that "the class members have suffered the same injury." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The class claims must "depend upon a common contention … capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350

Here, The Settlement Class Members claims can be resolved in "single stroke" by answering the following common questions: (1) does Brandt's timekeeping system capture and store biometric identifiers or biometric information; (2) did Brandt comply with Section 15(b)'s informed consent regime before requiring Settlement Class Members to use its timekeeping system; and (3) did Brandt permanently destroy its employees' biometric data once the purpose of which it was collected was moot? Because the answers to these questions will resolve Brandt's

liability on a class-wide basis, commonality is satisfied here.

### 5.  Common questions predominate.

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815.  Put another way, the critical issue is whether "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999).

That is the case here. The central liability questions identified above will all turn on common proof—*i.e.* expert testimony regarding the type of data captured by the timekeeping system, the uniform disclosures and release Brandt provides to its employees (if any), and the sufficiency of Brandt's data destruction policies (or lack thereof). In sum, the BIPA violations at issue can, for provisional certification purposes, be determined on a class-wide basis in a single adjudication without consideration of any individualized issues.  *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545-48  (N.D. Cal. 2018) (predominance satisfied where liability turned on class-wide issues—whether defendant's facial recognition software captured biometric identifiers, and, if so, whether defendant's uniform disclosures complied with Section 15(b)'s informed regime); *see also Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *33 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). As such, predominance is satisfied.

24

### 6.   A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule provides four criteria that govern superiority analysis, all of which weigh in favor of certification. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is 2,660 individual lawsuits for recoveries possibly as low as $1,000, plus attorneys' fees and costs. As each case would require resolution of identical factual and legal issues, the resulting efficiencies achieved by class-wide resolution are obvious.

### D.   The proposed Notice plan is constitutionally sound.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed forms of Notice, attached as Exhibits 1 and 3 to the Agreement, more than adequately appraise class members of the claims at issue, the cash benefits provided by the Settlement, the process for distributing those cash benefits, the proposed attorney fee and incentive awards, and the procedure for excluding oneself or objecting to the Settlement. *See* Ex. B [Agreement] at Exhibit 1 [Mail Notice]. Settlement Class Members will have 60 days to exclude themselves or object to the Settlement. *See* Ex. B at § II.19. The Mail Notice shall also direct recipients to the Settlement Website, which will provide Settlement Class Members with 24-hour access to additional information about the case, including important court documents and a detailed "long form" Notice document ("Website Notice"). *See* Ex. B at § VII.2.A-B; *see also id.* at Exs. 1, 3.

Accordingly, the proposed Notice Plan passes muster and should be approved.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiff as class representative; (3) appoint his attorneys Keogh Law, Ltd.; (4) designate either EPIC or the WWP as the *cy pres* recipient; (5) approve the proposed Notice Program, to be administered by ALCS; (6) direct that Notice be provided to the Settlement Class pursuant to the terms of the Agreement; (7) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (9) schedule a hearing to consider final approval of the Settlement. Class Counsels proposes the following schedule as set forth in the draft Preliminary Approval Order attached as Exhibit C, which provides the following schedule:

| _____,
2021
[14 days after the date of this Order] | Deadline for the Settlement Administrator to send notice to the Settlement Class in accordance with the Agreement and this Order (Notice Deadline) |
|---|---|
| _____,
2021
[Same as Notice Deadline] | Deadline for Plaintiff to file his Motion for Attorneys' Fees and Expenses, and any Incentive Award |
| _____,
2022
[60 days after Notice Deadline] | Deadline for any member of the Settlement Class to request exclusion from the Settlement or object to the Settlement in accordance with the Notice and this Order (Opt-Out and Objection Deadline) |
| _____,
2022
[21 days after the Opt-Out, Objection, and Claim Deadline] | Deadline for Plaintiff to file:<br>(1) Motion and memorandum in support of final approval, including proof of class notice; and<br>(2) Response to any objections. |
| _____, 2022 at _____ _.m.
[No sooner than 116 days after the date of this Order, at the Court's Convenience] | Final Approval Hearing |

Dated: February 3, 2022

Respectfully submitted,

**JOSEPH SHERMAN, individually and on behalf of all others similarly situated,**

By: _/s/ Gregg M. Barbakoff_
    Keith J. Keogh (ARDC 6257811)
    Gregg M. Barbakoff (ARDC 6305413)
    KEOGH LAW, LTD.
    55 W. Monroe St., Suite 3390
    Chicago, Illinois 60603
    Tel.: (312) 726-1092
    Fax: (312) 726-1093
    keith@keoghlaw.com
    gbarbakoff@keoghlaw.com

    *Attorney for Plaintiff and the Proposed Settlement Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Gregg M. Barbakoff, an attorney, hereby certify that on **February 3, 2022,** service of a true and correct copy of this document and any referenced exhibits was accomplished pursuant to ECF on all parties who are Filing Users.

/s/ Gregg M. Barbakoff

## <u>CERTIFICATE OF COMPLIANCE WITH CHARACTER COUNT LIMIT</u>

Pursuant to Local Rule 7.1, I, Gregg M. Barbakoff, hereby certify that on **February 3, 2022,** I used the Word Count Function of Microsoft Word, which indicated that this document, excluding the caption, Table of Authorities, Table of Contents, signature block, Certificate of Service, and Certificate of Compliance with Character Count Limit, contains 43,951 characters.

/s/ Gregg M. Barbakoff