E-FILED
Monday, 11 April, 2022  08:00:27 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JOSEPH SHERMAN, individually and on behalf of himself all others similarly situated, | ) ) ) Case No. 20-cv-1185 |
| *Plaintiff,* | ) ) Hon. Michael M. Mihm |
| v. | ) Presiding Judge ) |
| BRANDT INDUSTRIES USA LTD., | ) Hon. Jonathan E. Hawley ) Magistrate Judge |
| *Defendant.* | ) ) |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

128389

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT BACKGROUND.............................................................................2

        A.      Procedural History. ................................................................................2

        B.      Class Counsel negotiated an extremely favorable Settlement.............4

III.    ARGUMENT ......................................................................................................5

        A.      The Court should award attorney fees based on a percentage of the
                common fund. .........................................................................................5

        B.      Class Counsel's request is within the market rate. ..............................9

        1.      Analysis of the relevant market for legal services support the fee request. .........10

        2.      The risk of non-payment also supports the requested fee award. .......................11

        3.      The benefits conferred on the Settlement Class also supports the requested
                fee award. .............................................................................................13

        C.      Class Counsel's litigation expenses should be approved. ..................14

        D.      The Requested Service Award for Mr. Sherman should be approved.................15

IV.     CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Benzion v. Vivint, Inc.*,
  No. 12-61826 (S.D. Fla. Feb. 23, 2015) ..............................................................17

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792  (7th Cir. 2018) ..............................................................2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..............................................................5

*Bryant v. Compass Group USA , Inc*.
  958 F.3d 617 (7th Cir. 2020) ..............................................................2

*Bryant v. Loews Chicago Hotel, Inc.,*
  No. 1:19-cv-03195 (N.D. Ill. Oct. 30, 2020) ..............................................................9

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ..............................................................15

*Diaz v. Greencore USA – CPG Partners, LLC*,
  2017-CH-13198 (Cir. Ct. Cook Cnty. Aug. 30, 2019) ..............................................................14

*Dixon v. Smith Senior Living*,
  No. 1:17-cv- 08033 (N.D. Ill. Aug. 20, 2019) ..............................................................9, 16

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994) ..............................................................7

*Freeman-McKee v. Alliance Ground International, LLC*,
  No. 2017-CH-13636 (Cir. Ct. Cook Cty. June 15, 2021) ..............................................................11

*Gaskill v. Gordon*,
  942 F. Supp. 382 (N.D. Ill. 1996) ..............................................................7, 8, 10

*Hageman v. AT & T Mobility* LLC,
  No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ..............................................................17

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ..............................................................10

*Heekin v. Anthem, Inc.*,
  No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ..............................................................17

*Ikuseghan v. Multicare Health Sys.*,
   No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016)..................................17

*In re Amino Acid Lysine Antitrust Litig.*,
   No. 95 Civ.7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996)...................................................7

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .........................................................................8, 12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................................6

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ...............................................................................................6

*In re FedEx Ground Package System, Inc. Employment Practices Litig.*,
   251 F. Supp. 3d 1225  (N.D. Ind. 2017)...............................................................................6

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) .........................................................................................6, 7

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ..................................................................................9, 11, 15

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)......................................................................................8

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*,
   No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) ......................................................14

*Jones v. CBC Rest. Corp.*,
   1:19-cv-06736 (N.D. Ill. Oct. 22, 2020).......................................................................13, 16

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ............................................................................................10

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015).........................................................................................7

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
   No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015)..........................................17

*Lane v. Schenker, Inc.*,
   3:19-cv-00507  (Nov. 17, 2020 S.D. Ill.) ...........................................................................13

*Lees v. Anthem Ins. Companies Inc.*,
   No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) .................................17

*Marshall v. Life Time Fitness, Inc.*,
   17-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) ......................................................... 14, 16

*Martin v. Caterpillar Inc.*,
   No. 07-cv-1009, 2010 U.S. Dist. LEXIS 145111 (C.D. Ill. Sep. 9, 2010) ..........................7, 10

*Matter of Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ....................................................................................................8

*McDaniel v. Qwest Communs. Corp.*,
   Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) ....6, 10

*McGee v. LSC Communications*,
   No. 2017-CH-12818 (Cir. Ct. Cook Cty. Aug. 7, 2019) ..........................................................11

*Nolte v. Cigna Corp.*,
   No. 2:07-cv-2046-HAB-DGB, 2013 U.S. Dist. LEXIS 184622 (C.D. Ill. Oct. 15, 2013) ........8

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ....................................................................................................9

*Prelipceanu v. Jumio* Corp.,
   18-CH-15883 (Cir. Cook Cnty. July 21, 2020) ............................................................... 13, 16

*Primax Recoveries, Inc. v. Sevilla*,
   324 F.3d 544 (7th Cir. 2003) ....................................................................................................6

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ................................................................................................6, 9

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   Case No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...........................................10

*Rogers v. CSX Intermodal Terminals, Inc.*,
   No. 2019-CH-04168 (Cir. Ct. Cook Cty. May 31, 2021) ........................................................11

*Sekura v. L.A. Tan Enters., Inc.*,
   No. 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) .........................................................11

*Sharrieff v. Raymond Mgmt. Co., Inc.*,
   No. 2018-CH-01496 (Cir. Ct. Cook Cty. Aug. 1, 2019) .........................................................11

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ..................................................................................9, 12

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ....................................................................................6, 11

*Svagdis v. Alro Steel Corp.*,
  No. 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019)........................................11

*Taubenfeld v. Aon Corp.*,
  415 F.3d 597 (7th Cir. 2005) ....................................................................................9, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..........................................................................................6

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
  No. 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018) ........................................11

*Zhirovetskiy v. Zayo Group, LLC*,
  17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) ......................................11, 13, 16

**Statutes**

740 ILCS 14/1, *et seq.*............................................................................................5, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On March 21, 2022, this Court preliminarily approved a proposed class action settlement between Plaintiff Joseph Sherman ("Plaintiff" or "Sherman") and Defendant Brandt Industries USA LTD ("Brandt" or "Defendant"). This Settlement creates a $250,000.00, non-reversionary common fund ("Settlement Fund") to compensate 240 former employees for Brandt's alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

If finally approved, all Settlement Class Members who do not timely exclude themselves from the Settlement ("Settlement Class Participants") will automatically receive an equal, *pro rata* distribution of the Settlement Fund, without the need to file a claim or any other paperwork. After deductions for Notice and Administration Expenses, approved costs, attorneys' fees, and any Service Award, each Settlement Class Participant is estimated to receive a check for $616.60.  It is worth noting that the Settlement does not contain any clear sailing agreement as to either fees or service award and the notice approved by the Court advises the class members of both of these requests.  Along that line, this motion will be posted to the Settlement Website so that any class member may review it.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $86,400.00 which represents 36% of the settlement fund net administration costs[1] of $10,000, plus $614.90 for counsel's out-of-pocket costs.[2] *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-

---

[1] $250,000 fund minus $10,000 administration costs equals $240,000, of which 36% equates to $86,400.00.

[2] These expenses do not include any internal costs such as copying, legal research or telephone costs. *See* Declaration of Keith J. Keogh ("Keogh Decl."), ¶ 15, attached hereto as Appendix 1.

97 (7th Cir. 2018) (affirming attorney fees in consumer class action seeking statutory damages of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.)

This request should be approved because (1) it represents the market rate for this type of settlement and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, as well as the quality and extent of work conducted Class Counsel performed. Class Counsel also respectfully move the Court for a service award of $5,000 to Plaintiff Sherman for his work on behalf of the Settlement Class. As explained below, this service award is comparable or less than awarded in many class actions in this Circuit.

## II.   RELEVANT BACKGROUND

### A.  Procedural History.

On July 23, 2020, Brandt moved for dismissal under Federal Rules 12(b)(6) and 12(b)(1), arguing that: (1) Plaintiff lacked standing to pursue the Section 15(a) claim in light of the Seventh Circuit's decision in *Bryant v. Compass Group USA , Inc*. 958 F.3d 617, 626 (7th Cir. 2020); (2) Brandt's alleged failure to develop the biometric retention and destruction policy mandated by Section 15(a) precluded any liability for failing to comply with such a policy; (3) Plaintiff failed to allege the type of negligent and/or reckless/intentional conduct needed to recover statutory damages; and (4) Plaintiff's claims were preempted by the Illinois Worker's Compensation Act. *See, generally,* ECF Nos. 9-10.  The same day, Brandt moved to stay the case pending the Illinois Appellate Court's resolution of *McDonald v. Symphony Bronzeville Park, LLC*. *See* ECF Nos. 11-12.

On August 28, 2020, Brandt filed another motion to stay based on the pending appeals in *Marion v. Ring Container Technologies*. *See* ECF Nos. 19-20. On September 15, 2020, after briefing and oral arguments, the Court entered an Order granting the First Stay Motion and denying

the Second Stay Motion. *See* ECF No. 23.

On September 22, 2020, following the resolution of *McDonald,* the Court granted Plaintiff's motion to lift the stay. On November 12, 2020, after briefing and supplemental authorities, the Court entered an Order denying Brandt's motion to dismiss. *See* ECF No. 27. In its Order, the Court instructed Brandt to answer the Complaint and instructed Plaintiff to file his motion for class certification. *Id.*

On November 30, 2020, Brandt filed its Answer and Affirmative Defenses.  ECF No. 28. On December 21, 2020, Plaintiff filed his motion for class certification ("Class Cert Motion"). *See* ECF No. 30.

Shortly thereafter, the Parties discussed pursuing mediation.  Thus, on January 4, 2021, Brandt filed a motion to hold briefing on Plaintiff's Class Cert Motion in abeyance while the Parties explored mediation, ECF No. 31, which the Court granted on January 6, 2021.

On February 9, 2021, Brandt notified the Court the Parties had decided against pursuing mediation. ECF No. 32, At the same time, Brandt filed a third motion to stay the matter pending the resolution of three interlocutory appeals.  *See* ECF Nos. 33-34.  Following full briefing and oral arguments, the Court denied Brandt's motion on March 18, 2021, and directed the Parties to hold a Rule 26(f) planning conference.

During the Parties' subsequent Rule 26 planning conference, Brandt requested leave to depose Plaintiff before responding to the Class Cert Motion.  *See* ECF No. 39 at 6. Thus, the Court withdrew the pending Class Cert Motion and granted Plaintiff leave to refile following the completion of class discovery.

The Parties subsequently served interrogatories and requests to produce, exchanged written discovery responses, and produced responsive documents. The Parties' discovery efforts were

highly contentious, resulting in a number of 37.2 conferences as well as months of contested motion practice, oral arguments, and appeals concerning the subpoenas issued to two of Plaintiff's former employers. *See* ECF Nos. 45-46, 48-51, 55-56, 58-62. After this dispute was resolved, Plaintiff served his second set of interrogatories and document requests on September 15, 2021, to which Brandt responded on October 15, 2021. *See* ECF No. 63. On October 29, 2021, Brandt supplemented its document production by producing another set of responsive documents. ECF No. 65. On November 11, 2021, Plaintiff issued a third-party subpoena to Kronos, Inc., the manufacturer of the time keeping system at issue. *See App. 1* (Keogh Decl.), ¶ 4.

With written discovery largely complete, the Parties began coordinating oral discovery. *Id.* To that end, Brandt noticed Plaintiff's deposition for December 3, 2021, and Brandt's 30(b)(6) representative's deposition for December 8, 2021. *Id.*

In the meantime, beginning in early September 2021, the Parties revisited the issue of a class-wide settlement. *Id.* at ¶ 5. After several rounds of arm's-length negotiations, the Parties reached an agreement in principle on the terms of the Settlement on November 19, 2021. *Id.* The Parties then negotiated the final terms of the Settlement over the next two-and-a-half months, *id.*, which ultimately culminated in the fully executed Settlement Agreement the Court preliminarily approved on March 22, 2022.

**B. Class Counsel negotiated an extremely favorable Settlement.**

The Settlement Class is defined as follows:

The 240 individuals employed by Defendant Brandt Industries USA LTD and any other related entities in the State of Illinois and/or assigned to work at the Illinois facility of Brandt Industries USA Ltd. by temporary staffing agencies, who logged onto, interfaced with, or used any software, systems, or devices that used the individual's finger, hand, or any biometric identifier of any type ("Biometric Systems") in Illinois, including any employee of the above entities who has a claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq., during the statutory period through November 22, 2021.

4

*See* Agreement § II.30,[3] a copy of which is attached hereto as *Appendix 2.*.

The Settlement requires Brandt to create a non-reversionary Settlement Fund of $250,000.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See App. 2* (Agreement), at §§ II.36, VI.5, XI.2-3. No amount of the Settlement Fund will revert to Brandt, and Settlement Class Members aren't required to submit a claim or take any action to receive compensation. Instead, the Settlement Administrator will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ VI.5, XI.2. Checks issued to Settlement Class Members shall remain valid for 120 days from the date of their issuance. *Id.* at § XI.2.

Thus, each of the 240 Settlement Class Members stand to receive $616.60 after deductions for Notice and Administration costs, approved attorneys' fees, litigation expenses, and a court-approved Service Award. This is an outstanding result, given that BIPA provides $1,000 in statutory damages for each negligent violation. *See* 740 ILCS 14/20(1).

## III.   ARGUMENT

### A.   The Court should award attorney fees based on a percentage of the common fund.

The Seventh Circuit has followed the Supreme Court in recognizing when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504

---

[3] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family and all persons who timely opted-out of the Settlement Class.  *Id.*

F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003)(creation of a common fund "entitles [counsel] to a share of that benefit as a fee").

The Court should use the percentage of the fund approach to determine a reasonable fee award in this case. The Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to ex ante." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 ("*Synthroid II*") (7th Cir. 2003)); s*ee also In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").[4]

One of the primary advantages the percentage of the fund approach has over the lodestar approach—and a substantial reason why percentage of the fund more accurately represents the

---

[4] In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"); *Synthroid II.,* 325 F.3d at 979-80 (7th Cir. 2003) ("The client cares about the outcome alone" and class counsel's efficiency should  not be used "to reduce class counsel's percentage of the fund that their work produced."). The trend in other circuits is to use the percentage of the fund method, as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001); *see also McDaniel v. Qwest Communs. Corp.,* Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.") (Pallmeyer, J.).

"market rate"—is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.). The percentage of the fund approach, by contrast, promotes early resolution and eliminates the incentive for plaintiffs' attorneys to inflate their billable hours by engaging in wasteful litigation. *See Synthroid II*, 325 F.3d at 979-80. By limiting attorneys' fees to a percentage of the common fund, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also Martin v. Caterpillar Inc.*, No. 07-cv-1009, 2010 U.S. Dist. LEXIS 145111, at *8 (C.D. Ill. Sep. 9, 2010) ("The American Law Institute … advises that a percent-of-the-fund approach should be the method utilized in most common fund cases, with the percentage being based on both the monetary and the non-monetary value of the settlement.") (quoting Principles of the Law of Aggregate Litigation, A.L.I., at § 3.13(b) (May 20, 2009)) (emphasis in original); *In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ.7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self- interest").

Along that line, the percentage of the fund approach preserves judicial resources by sparing the Court the cumbersome task of reviewing complicated and lengthy billing records. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). As one seminal case put the point:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill,* 942 F. Supp. at 386 (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable.").

For this reason, courts in this Circuit routinely apply the percentage of the common fund method and have noted the advantages of this approach. *See, e.g.*, *Nolte v. Cigna Corp.*, No. 2:07-cv-2046-HAB-DGB, 2013 U.S. Dist. LEXIS 184622, at *7 (C.D. Ill. Oct. 15, 2013) ("When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis."); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *7, 10 (S.D. Ill. Nov. 22, 2010) (applying percentage method and holding "[t]he use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive") (collecting cases); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making); *see also Bryant v. Loews Chicago Hotel, Inc.,* No. 1:19-cv-03195, ECF No. 77

(N.D. Ill. Oct. 30, 2020); *Dixon v. Smith Senior Living*, No. 1:17-cv- 08033, ECF No. 103 (N.D. Ill. Aug. 20, 2019).

### B.  Class Counsel's request is within the market rate.

In applying the percentage of the common fund approach, the Court must decide what percentage of the common fund is appropriately awarded as attorney's fees.

This requires a threshold determination as to the net common fund, as there is a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). To that end, the Seventh Circuit directs district courts to analyze "(1) the fee to (2) the fee plus what the class members receive[]." *Id.* at 781 (quoting *Redman*, 768 F.3d at 630). The fee request falls squarely within this presumption, as Class Counsel seeks $86,400.00 in fees, which amounts to 36% of the net Settlement Fund ($86,400.00 fee / $240,000.00 [fee + amount to class]).

Next, the Court must determine whether the request  is reasonable in light of the prevailing market rate.  *See, e.g., Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (holding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). To that end, a district court should "do [its] best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Other factors are relevant, as well, including the risk counsel undertook in accepting the case and the quality of their performance. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 ("*Synthroid I*") (7th Cir. 2001). As explained below, each of these factors supports the requested fee.

9

**1. Analysis of the relevant market for legal services support the fee request.**

As noted above, the percentage of the fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Id.* (emphasis in original).

Here, Class Counsel seeks a fee award of 36% of the net Settlement Fund. This percentage is consistent with standard contingency fee awards in this Circuit, which range from 33% to 40% of the amount recovered. *See, e.g., Gaskill*, 160 F.3d at 362–63 (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Martin*, 2010 U.S. Dist. LEXIS 145111, at *6 ("[C]ourts in the Seventh Circuit award attorney fees "equal to approximately one-third or more of the recovery. The Seventh Circuit itself has specifically noted that the typical contingent fee is between 33 and 40 percent.") (citations and quotations omitted); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *35 (S.D. Ill. Dec. 13, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee ranges "between 33 1/3% and 40%" of amount recovered); *McDaniel*, 2011 U.S. Dist. LEXIS 154591, at *11-12 ("[T]he real world market range for contingent fee cases is 33% to 40%."). It is worth noting that the above rates were prior to the Seventh Circuit requiring administration costs to be deducted first. Thus the fees approved in the preceding cases would be at a higher percentage if they were recalculated to control for administration costs to be deducted first.

In addition, the 36% sought here is less than the percentage of the gross (rather than net) settlement fund commonly awarded by Illinois courts in similar BIPA cases. *See, e.g., Sekura v. L.A. Tan Enters., Inc.,* No. 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (in BIPA case, awarding 40% of total fund); *Zepeda v. Intercontinental Hotels Grp., Inc.,* No. 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018) (same); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566, No. 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) (same); *Zhirovetskiy v. Zayo Group, LLC,* No. 2017-CH-09323 (Cir. Ct. Cook Cty. April 8, 2019) (same); *McGee v. LSC Communications*, No. 2017-CH-12818 (Cir. Ct. Cook Cty. Aug. 7, 2019) (same); *Sharrieff v. Raymond Mgmt. Co., Inc.*, No. 2018-CH-01496 (Cir. Ct. Cook Cty. Aug. 1, 2019) (same); *Freeman-McKee v. Alliance Ground International, LLC*, No. 2017-CH-13636 (Cir. Ct. Cook Cty. June 15, 2021) (same); *Rogers v. CSX Intermodal Terminals, Inc*., No. 2019-CH-04168 (Cir. Ct. Cook Cty. May 31, 2021) (in BIPA case, approving 38% of total fund).

Accordingly, the prevailing market rate for contingency fee cases generally, and for BIPA class actions in particular, both confirm the reasonableness of the requested fee award.

### 2. The risk of non-payment also supports the requested fee award.

The reasonableness of the requested fee award is further bolstered by the significant risk of non-payment Class Counsel faced at the outset of this litigation. *See Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorneys' fees); *Synthroid I*, 264 F.3d at 718 (court should "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers … at the outset of the case (that is, when the risk of loss still existed)").

By taking this case on a contingency fee basis, Class Counsel assumed the risk they would receive no payment for their services. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is

generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").

As discussed in Plaintiff's motion for preliminary approval, Brandt raised several legal and factual defenses that, if successful, would have precluded any recovery in this case. Specifically, Brandt intended to evade liability by demonstrating: (1) the timekeeping system at issue doesn't capture the type of "biometric identifiers" or "biometric information" covered by BIPA (an issue that would require costly expert and third-party discovery); (2) Brandt's good-faith interpretation of BIPA precludes any finding of negligence or recklessness, which are prerequisites for recovering statutory damages; (3) the doctrines of waiver, estoppel, ratification, or acquiescence barred any right of recovery; (4) Plaintiff and the Settlement Class assumed the risk of any injuries resulting from Brandt's alleged statutory violations; and (5) Plaintiff and the Settlement Class lack Article III standing to pursue their BIPA claims. *See* ECF No. 28 at 22-25; ECF No. 54.

While Class Counsel remain confident Plaintiff would have prevailed, success—especially at the outset of the case—was by no means assured. To the contrary, the risk of loss was particularly acute given the dearth of legal authority on Brandt's affirmative defenses. *See Silverman*, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Apart from jeopardizing any recovery for the class, litigating those issues would have required Class Counsel to expend significantly more time, money, and resources— including potentially substantial expert fees—for which they would receive no compensation upon losing at summary judgment, class certification, or trial. *See App. 1* (Keogh Decl.), ¶ 10; *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to

overcome case dispositive defenses and certify a class). As such, the considerable risk Class Counsel faced in prosecuting this action on a contingency fee basis illustrates the reasonableness of the requested fee award.

> **3. The benefits conferred on the Settlement Class also supports the requested fee award.**

The quality of Class Counsel's performance, as demonstrated by the Settlement itself, further supports the requested fee award. As noted above, each Settlement Class Participant will receive $616.60 after Court-approved reductions for attorneys' fees and expenses, a Service Award for Plaintiff, and Administration Expenses. These payments will arrive via check, without the need to submit a claim form (or take any other steps, for that matter).

This is an outstanding result when viewed against the potential $1,000 recovery[5] Plaintiff could have obtained had she proven a negligent violation of BIPA at summary judgment or trial *after* prevailing at class certification, *see* 740 ILCS 14/20(1), which would have entailed years of additional litigation. What's more, the gross recovery of $1,041.66/net recovery of $616.60 afforded by the Settlement compares favorably to other BIPA settlements that have received final approval. *See, e.g., Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Lane v. Schenker, Inc.,* 3:19-cv-00507, ECF No. 51 (Nov. 17, 2020 S.D. Ill.) (Rosenstangel, J.) (gross recovery of $1,000 per class member); *Prelipceanu v. Jumio* Corp., 18-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant);[6] *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cir. Ct. Cook Cty. Apr.

---

[5] It's still an open issue whether individuals are entitled to $1,000 every time BIPA protected information is taken, or if they are entitled to $1,000 total.

[6] That settlement was structured as a claims-made framework. While the Parties' briefs did not disclose the number of participants or net recovery per claimant, the settlement website states that claimants would receive up to $262.28 per person. *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/illinois-jumio-biometric-class-action-settlement/?nowprocket=1 (last visited April 11, 2022).

8, 2019) (gross recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member); *Diaz v. Greencore USA – CPG Partners, LLC*, 2017-CH-13198 (Cir. Ct. Cook Cnty. Aug. 30, 2019) (gross recovery of $696.27 per class member); *Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (net recovery of $270 per claimant, plus dark web monitoring valued at $130).

Moreover, the Settlement was achieved after Class Counsel spent more two years litigating this case, which entailed: (1) conducting significant pre- and post-suit research into the rapidly evolving case law on BIPA; (2) briefing a motion to dismiss; (3) briefing two motions to stay; (4) analyzing the strength and weaknesses of Plaintiff's claims and Brandt's affirmative defenses; (5) conducting written discovery on both class and merits issues including, but not limited to, the makeup of the proposed class, the data captured by Brandt's timekeeping system, the manner in which Brandt handled and stored the data collected by its timekeeping system, and Brandt's policies and practices regarding the collection, use, and storage of biometric data; and (6) litigating a number of discovery disputes. *See App. 1* (Keogh Decl.), ¶ 4. These efforts, combined with the outstanding results Class Counsel achieved, further supports the requested fee award.

For all these reasons, the requested fee award is reasonable and should be granted.

**C.  Class Counsel's litigation expenses should be approved.**

The Settlement provides that Class Counsel may apply to the Court for payment of litigation expenses. To that end, Class Counsel seeks reimbursement for $614.90 of actual costs incurred in prosecuting this action, which only include the filing fee, the service of process fee, and transcript fees. *See App. 1* (Keogh Decl.), ¶ 16. Because these charges were necessary in order

to litigate and settle the case, Class Counsel's request for reimbursement of those expenses from the gross Settlement Fund is appropriate and should be approved.

### D.  The Requested Service Award for Mr. Sherman should be approved.

Class Counsel also respectfully request the Court grant a service award of $5,000 to Plaintiff Joseph Sherman for his efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded.  Once again, there is no clear sailing agreement relating to any service award and the settlement is not contingent upon any such award.

Service awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff's role in this litigation was crucial. Plaintiff sacrificed his time to prosecute this case on behalf of the 240 individuals who used Brandt's timekeeping system. *See* Declaration of Joseph Sherman ("Sherman Decl."), ¶¶ 7-11, attached hereto as *Appendix 3*.  Prior to filing, Plaintiff held several telephone conferences with Class Counsel to discuss the facts regarding his employment with Brandt, his knowledge of the timekeeping system at issue, and his obligations as the class representative.  *Id.*, ¶ 7. After Brandt's motion to dismiss was denied, Plaintiff consulted with Class Counsel by phone and e-mail on several occasions to provide the facts set forth in his declaration in support of the motion certification, and approve the final draft.  *Id.*, ¶ 8.

During discovery, Plaintiff spent considerable time assisting Class Counsel in responding to Brandt's discovery requests, which entailed gathering and producing documents, consulting in the preparation of the interrogatory responses, and reviewing and verifying the final drafts of his discovery responses. *Id.*, ¶ 9.  Plaintiff also conferred with Class counsel on several occasions to furnish information about his prior work history during the briefing on the motion to quash Brandt's third-party subpoenas.  *Id.*   In addition, Plaintiff spent considerable time reviewing documents and consulting with Class counsel by phone and e-mail in preparation for his deposition. *Id.*

Further, Plaintiff stayed abreast of the litigation and settlement discussions throughout the case by communicating with Class Counsel for regular updates. *Id.*, ¶ 10. Once settlement negotiations concluded, Plaintiff reviewed the settlement, at length, and discussed its terms with Class Counsel prior to signing.  *Id.*, ¶ 11. It is worth noting that Plaintiff had numerous opportunities to resolve this matter for himself where he could have made much more than the amount requested, but instead looked out for the class' interest. *See App. 1* (Keogh Decl.), ¶ 18. Class Counsel submits that such dedication well supports the requested service award.

Moreover, the $5,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts in similar BIPA disputes, as well those approved by federal courts throughout the country in analogous class actions. *See, e.g., Dixon*, No. 1:17-cv-08033, ECF No. 103 (approving $10,000 service award in BIPA settlement); *Prelipceanu*, 18-CH-15883 (same); *Zhirovetskiy,* No. 2017-CH-09323 (same); *Roach v. Walmart Inc*. No. 2019-CH-01107 (Cir. Ct. Cook Cty. June 16, 2021) (same); *Jones*, 1:19-cv-06736, ECF No. 53 (approving $7,500 service award in BIPA settlement); *Lane*, 3:19-cv- 00507, ECF No. 51 (same); *Marshall*, 17-CH-14262 (approving $5,000 service award in BIPA class action); *Woods v. Club Cabaret,*

16

*Inc.*, No. 1:15-cv-01213-JEH, 2017 U.S. Dist. LEXIS 198896, at *34 (C.D. Ill. May 17, 2017) (approving $5,000 service award FLSA class action that settled before plaintiff was deposed); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, ECF No. 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, ECF No. 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement).  The requested service award of $5,000 for Plaintiff is reasonable and should be approved.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully request the Court grant this motion and award Class Counsel $86,400.00 in attorneys' fees, which represents 36% of the net Settlement Fund, plus

$614.90 of counsel's out-of-pocket costs. Class Counsel further requests that the Court approve a service award to Plaintiff Sherman in the amount of $5,000.

Dated: April 11, 2022

Respectfully submitted,

**JOSEPH SHERMAN, individually and on behalf of all others similarly situated,**

By:  /s/ Gregg M. Barbakoff
    Keith J. Keogh (ARDC 6257811)
    Gregg M. Barbakoff (ARDC 6305413)
    KEOGH LAW, LTD.
    55 W. Monroe St., Suite 3390
    Chicago, Illinois 60603
    Tel.: (312) 726-1092
    Fax: (312) 726-1093
    keith@keoghlaw.com
    gbarbakoff@keoghlaw.com

*Attorney for Plaintiff and the Proposed Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on **April 11, 2022,** I caused a copy of the foregoing document, including all attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.

 /s/ Gregg M. Barbakoff_____

## **CERTIFICATE OF COMPLIANCE WITH CHARACTER COUNT LIMIT**

Pursuant to Local Rule 7.1, I, Gregg M. Barbakoff, hereby certify that on **April 11, 2022,** I used the Word Count Function of Microsoft Word, which indicated that this document, excluding the caption, Table of Authorities, Table of Contents, signature block, Certificate of Service, and Certificate of Compliance with Character Count Limit, contains 5,580 words.

/s/ Gregg M. Barbakoff_____